Good morning, your honors, and may it please the court. Colin Davis and the University of San Diego Legal Clinic, appearing on behalf of the petitioner, Alida Godinez Aguilar. Thank you, Mr. Davis. May I please reserve one minute for rebuttal? Sure. Thank you, your honors. Before I turn to the merits of the case, I would like to briefly address the letter that we submitted to the court yesterday afternoon. We apologize for the timing of the letter. Unfortunately, we just learned Wednesday evening that Ms. Godinez's father had, in fact, applied for citizenship. However, we did think it was important to bring this point to the court's attention, as the court had previously requested information regarding the status of Ms. Godinez's I-130 petition. It is possible that Ms. Godinez's father's citizenship application may open additional avenues to Ms. Godinez for relief. However, we have not yet had a chance to fully explore these opportunities with our client. Have you had a chance to talk to government counsel? We have briefly discussed it with government counsel. Yes, your honor. Anything? Your honor, the government's counsel has indicated that they are not willing to submit this case to mediation. However, we do believe that this case would be a good candidate for mediation. I guess they'll speak for themselves. Thank you. Turning to the merits, your honors, the most significant error in this case is the immigration judge's failure to address Ms. Godinez's well-founded fear of future persecution claim. Because of her uncle's positions in the Guatemalan military, Ms. Godinez's family was threatened, and she feared persecution on account of imputed political opinion and membership in a particular social group. However, the immigration judge focused his decision on General Strife alone. Under this court's holdings in Sagadak and Muradin, the immigration judge's failure to address Ms. Godinez's claim constitutes legal error, and this court must remand to allow the immigration judge to properly consider this claim in the first instance. Your honors, the immigration judge's decision proves that he failed to address Ms. Godinez's claim based on her uncle's positions in the Guatemalan military. At page 50 of the record, the immigration judge states that it is well-established that a fear of General Strife alone, and I'm quoting, however compelling, does not alone substantiate a well-founded fear of persecution within the meaning of the act. While this is a correct statement of the law, it does not describe Ms. Godinez's claim. Ms. Godinez's claim was based on her uncle's positions in the Guatemalan military, which caused her family to be threatened by the Guatemalan guerrillas. Well, he says that. He specifically says after the sentence you read, she had some uncles that were in the military. It's not like he wasn't aware of this. Although he recognized her claim, he never analyzed whether she had a well-founded fear of persecution on that basis. He focused entirely on Ms. Godinez's fear of General Strife. Later in that same paragraph, he states that Ms. Godinez was just afraid of General Strife. Well, it says, nonetheless, in the confused situation there, she was afraid of both the military and the guerrillas. Even if that recognizes both bases of Ms. Godinez's claim, the immigration judge failed to analyze her fear based on threats to her family. Ms. Godinez testified at her removal hearing at pages 85 and 86 of the record that she left Guatemala because her father had brothers in politics, and she was afraid. She was afraid because her father was threatened by the guerrillas. This is the language of a claim based on imputed political opinion, membership in a particular social group, and a well-founded fear of persecution on that account. However, the immigration judge's decision never once mentions threats, never once mentions the connection between Ms. Godinez's family and her fear, and never once mentions her political opinion and membership in a particular social group, despite Ms. Godinez raising that in her asylum application at pages 126 and 127 of the record. Your Honor, it is clear from the immigration judge's decision that he erred in one of two ways. Either he concluded that Ms. Godinez's fear of General Strife somehow undermined her claim based on threats to her family, or he entirely disregarded Ms. Godinez's claim based on her family's position in the Guatemalan military. In either case, the immigration judge erred as a matter of law. As this court held in Sinha and Ndam, an applicant's fear of General Strife does not undercut their claim based on persecution particular to the petitioner. Similarly, as this court held in Sigaydak and Muradin, an immigration judge's failure to address one of the bases of an asylum applicant's claim constitutes legal error. I have a question about the letter. I'm sort of circling back to where we started. What is your best understanding of how long a process it would be between now and the time petitioner's father obtains citizenship? It is our understanding, based on the immigration national, or excuse me, USIS's website, that it would take approximately five months for Ms. Godinez's father's application to be processed. Once her father's application is processed, she would be eligible to be upgraded from a second preference category to a first preference category, in which case a visa would be immediately available to Ms. Godinez. Your Honors, in addition, the immigration judge's decision in this case is simply too unclear to review. As this court held in Recinos de Leon versus Gonzalez, immigration judge's decision is too unclear for this court to conduct meaningful appellate review. The court must remand in order to provide the immigration judge an opportunity to correct his reasoning. The reasoning in this case is unclear because the immigration judge failed to articulate and apply a deservable legal standard to Ms. Godinez's claims. Did you exhaust that at the BIA? Your Honor, we were not required to exhaust this claim before the BIA because Ms. Godinez could not anticipate that the BIA would not correct the immigration judge's error. If the immigration judge failed to do so. I don't understand that. Your complaint is that the IJ didn't make proper findings. And I'm asking you is, did you complain to the BIA about what the IJ failed to do? Regarding the immigration judge's failure to make proper findings, Ms. Godinez did in fact exhaust that claim. At pages 14 and 15 of the record, Ms. Godinez does indicate that the immigration judge failed to consider whether she had experienced, whether her life or freedom had been threatened such that a presumption of well-founded fear would apply. Well, I have her brief. The section you're referring to says the IJ's decision was not supported by substantial evidence. I don't see a claim here that he didn't make proper findings. At the bottom of page 14, Your Honor, Ms. Godinez states, the immigration judge did not consider the fact that if respondents suffered persecution in the past such that his or her life or freedom was threatened,  would be threatened upon return to Guatemala. This court has consistently held that a petitioner not use exact language, especially in a pro se appeal to the Board of Immigration Appeals. Accordingly, it is our position that that claim was exhausted before the Board of Immigration Appeals. Your Honor, the immigration judge's decision is too unclear because the immigration judge failed to articulate and apply a discernible legal standard. The immigration judge could have analyzed Ms. Godinez well-founded fear of future persecution claim in one of two ways. The immigration judge could have simply considered the evidence and determined whether Ms. Godinez had an objectively well-founded fear of future persecution. Or the immigration judge could have applied what we refer to in our briefs as the persecution presumption analysis under 8 CFR 208.13b. Under the persecution presumption analysis, the immigration judge must first make a finding of past persecution, at which point a presumption of a well-founded fear of future persecution arises. The immigration judge must then shift the burden to the government to rebut that presumption by showing changed country conditions. It is unclear whether the immigration judge applied either of those two analyses because the immigration judge did never discuss Ms. Godinez, the threats that Ms. Godinez experienced, and the connection between those threats and her family. And the immigration judge made a changed country conditions finding, but no past persecution finding. Thank you, Mr. Davis. You've got about a minute left if you're reserved. Thank you, sir. Good morning. Good morning, Your Honors. May it please the Court, my name is Edith Yacone, and I represent the respondent, Attorney General of the United States. I'd like to take the opportunity this morning to address several of the arguments made by Ms. Godinez in her brief, and by counsel at oral argument this morning. The first relates to past persecution, the second relates to future status. Would you first address the matters raised in the letter? This is a situation in which this person has already been in line for five years, essentially. And there's an approved petition, and it appears that her father shortly will become a citizen, and that she'll be able to stay. Why shouldn't we allow that to happen in this case? As I mentioned to counsel for petitioner over the phone yesterday, there is a visa petition which was filed by petitioner's father, who is a lawful permanent resident, and apparently is applying for citizenship at the moment. However, petitioner will be ineligible for adjustment of status under section 245A of the Act, USC 1255A, because she does not have a lawful entry in the United States. Or if she does have a lawful entry, or was paroled in the United States, that's not in the record, and I have no such information. She's also ineligible for adjustment under. She has an approved petition, so what effect does that have on her ultimate eligibility for a visa? Well, the visa would be currently available for an individual in her situation. However, in order to adjust status under section 245A of the Act here in the United States, she would have to have had a lawful entry. There is section 245I of the Act, which allows individuals who enter without inspection to adjust, but such petitions must be filed on or before April of 2001. This petitioner had a petition filed on her behalf by her lawful permanent resident father in September of 2003. You say even if a visa became available, she would not be able to adjust? That is correct. How about if her father becomes a citizen, same thing? Same thing. She's ineligible for adjustment, and thus, the government's position is that mediation would be futile, because adjustment is simply not available for her here in the United States at the moment. So if you wouldn't mind, I'll turn to the question of past persecution, unless you have further questions about the adjustment of status question. So I'd like to take this opportunity to address Ms. Godinez's argument in her briefs, and that argument this morning, that the crux of her asylum application is a claim of past persecution, that the IJ failed to address that claim, and that remand would be necessary in order to seek further clarification or a new decision. To begin with, I would point your honors to the actual application that was filed by Ms. Godinez in immigration court. She swore to that content of that application, and on page 126, it asked her whether she or her family experienced harm, mistreatment, or threats in the past by anyone. In other words, is yours a claim of past persecution? She said no. She did testify in immigration court that her father had brothers in the military, and her father was threatened by the guerrillas. However, when asked if she was present when this happened, she said, quote, my father used to tell us, but we lived all that when we were small. She was also asked, were you afraid because your uncles were in the military, or were you just afraid because it was a bad situation and everyone was afraid? She stated, because it was a bad situation, everybody. She was also indicating that she came to the United States because she was scared, because people used to go to the houses and assault the girls. When asked who these people were, she stated that she wasn't sure whether it was the guerrillas or the military. She was asked if she was afraid of the guerrillas and the military, and she said both of them. And then she was asked, well, if your uncles were in the army, why would you be afraid of the army? She said, it was something because we couldn't trust in anyone. She was afraid of both sides. She said yes. And then she indicated that she stayed in Guatemala for an additional 10 years after her father departed the country in 1984 or 85. She went to work for another lady somewhere, and nobody threatened her in particular during that period of time. She had family members who remained in the country and weren't threatened either. And for that reason, the immigration judge, and based on that record, stated that she had uncles in the military. Nonetheless, in the confused situation, she was afraid of both the military and the guerrillas. She was really just afraid of people on either side. The immigration judge considered her experiences in Guatemala in stating, even at the time she lived in Guatemala, she didn't believe that she was being particularly sought after or targeted. She was just afraid of civil strife. Ultimately, the immigration judge concluded that she failed to meet her burden of proof in demonstrating eligibility for asylum. As your honors know, the burden of proof in demonstrating eligibility for asylum is on the applicant. And although there's no universal definition of persecution, this court has explained that it is an extreme concept. This court has defined persecution as infliction of suffering or harm upon those who differ in a way regarded as offensive. This court has also explained that asylum is generally not available to victims of civil strife unless they're singled out on account of a protected ground. And acts of violence against a petitioner's family or friends may amount to persecution, but isolated evidence is not enough. There must be a connection between the violence cited and the applicant's own likelihood of being persecuted. Finally, unfulfilled threats standing alone constitute past persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual suffering or harm. Here, the record doesn't compel the conclusion  It's because she fell so short of demonstrating past persecution that the remand would be of no purpose, be it an unnecessary expenditure of time and resources. I'd also like to address the petitioner's claim that the Board of Immigration Appeals engaged in improper fact-finding. Here, the Board of Immigration Appeals simply said that the immigration judge's conclusions,  They affirm the immigration judge's conclusion that the respondent failed to establish past persecution or a well-founded fear of future persecution. In other words, what the board is saying is we affirm the immigration judge's finding that Ms. Godinez failed to demonstrate eligibility for asylum. As some, remand would be futile in this case because Ms. Godinez's claim fell so short of demonstrating eligibility for asylum. Her testimony is found in five solitary pages of the record. Her claim was so weak that the Department of Homeland Security didn't even seek to cross-examine her, something which you know, after being in so many immigration cases, is a rarity in this field. In sum, Your Honors, the government's position is that Ms. Godinez's petition for review should be denied for the reasons stated in our brief and those presented by me today in oral argument. Thank you, Mr. Cohen. Thank you. Mr. Davis, back to you. Let me ask you, Mr. Cohen says that even if she became eligible for a visa, she wouldn't be able to adjust. Do you have any comment on that? Yes, Your Honor. Even if Ms. Godinez was potentially ineligible for adjustment of status, she may potentially be eligible for consular processing. If she did, in fact, go through consular processing in her home country, this case would potentially be rendered moot, as Ms. Godinez would be admitted as a lawful permanent resident. You'd have to go back there to do that? That's correct, Your Honor. Your Honor, just briefly, nothing opposing counsel says can add analysis of Ms. Godinez's claim based on threats to the immigration judge's decision. Without that analysis, this court cannot affirm. As the Supreme Court held in Chenery 1 and as this court held in Racino-Stayleone versus  on a ground that was not addressed in the immigration judge's decision. Because the immigration judge did not address Ms. Godinez's claim based on her uncle's positions in the Guatemalan military, there is no legally cognizable ground on which this court can affirm. Thank you, Your Honors. Thank you, Mr. Davis. Mr. Cohen, thank you. The case just argued is submitted. We want to thank also the University of San Diego Clinic for taking this case. And Mr. Davis, it's hard to believe you're a law student. You just did a terrific job today. Thank you. Thank you, Your Honor. Next case is 0955189, Gasparian versus Astrew. Each side has 10 minutes.
judges: Scullin, Silverman, Graber